1-9-1-6-6-0 May it please the court, my name is Adam Aleiwa and I represent Mr. Nare Palaniappan, Defendant Appellant. I'd like to use my limited time to address an argument that wasn't precluded by the Eldred panel. Specifically, the argument is that the Magistrate Judge was misled by the government when the government applied for the warrant. The previous panel only addressed whether the agents were not right in relying on the face of the warrant to enact in good faith. This was Joe Flatt in the 11th Circuit, U.S. v. Taylor, dissented and suppressed on the grounds that the Magistrate Judge was actually misled by the government. So the argument is that the good faith exception doesn't apply but that the government didn't in fact act in good faith when they applied for the search warrant to the Mag Judge. So the reason why the government didn't act in good faith, you have to understand the context of the investigation. Weren't the FBI agents who executed the warrant entitled to believe they had a valid warrant? They weren't the same agents who applied? My argument is that the agents drafted the application in a deceptive way to get the judge to authorize the warrant. So even though the warrant was authorized ultimately and said, you know, you can search in the Eastern District of Virginia, the argument is that the way they got that authorized warrant was misleading. Yours is a motion to suppress, isn't it? Yes, yes. Why should the evidence be suppressed? Because the government, as almost every single court has agreed, was ultimately illegal. The search the government did with the NIT was ultimately not valid and the only remaining argument is that whether or not the government acted in good faith. I'm arguing that the government in applying for the warrant to the Mag Judge did not act in good faith. And the reason why, I'll try and get to you quickly, which is that, you know, this was not an ordinary investigation. They had buy-in from the executives of the DOJ. It was not an easy decision for the government to host and distribute child pornography. And the lead-up to the investigation, there was a manual that basically in 2009 acted as a road map for exactly the legal issues that the court ultimately said, this is why the NIT's legal. There was a 2013 case in Texas that was, again, a road map for the legal issues in this case that said the NIT wasn't authorized. Knowing all this... Wasn't all of this also available to the Eldred panel? Yes, but the Eldred panel only focused on whether the face of the warrant was, the agents couldn't rely on it. The argument that wasn't addressed by the Eldred panel was whether the agents acted in good faith and had candor with the Magistrate Judge when they were applying for the warrant. And the argument is that the agents buried... I don't know that that's an accurate reading of Eldred, but okay, go ahead. So on page 21 of Eldred, the court acknowledges that the only prong of Leon that's addressed is whether or not the agents were right to rely on the face of the warrant. Completely unaddressed by the Eldred panel was the first prong of Leon, which is whether the Magistrate Judge was misled by information... Page 21. 20 and 21. The citation is 933 F3rd 110. What's the official pin site? I don't have the official pin site in front of me, Your Honor. I apologize. But the Eldred panel, I can quote, says that the defense counsel didn't make any argument but that the agents were not right in relying on the face of the warrant. The court didn't have the opportunity to address the run-up to getting the search warrant. That point in time and that analysis, that was completely unaddressed by the Eldred panel and it's actually the basis for a very well-written dissent in the 11th Circuit by Joe Flatt and U.S.B. Taylor. And if I can just very briefly summarize Joe Flatt's analysis in the 11th Circuit, when the government applied for this search warrant, they knew that they had an issue with the geographical scope of the warrant. There was copious amounts of guidance from within the DOJ as well as case law and they buried the issue of the geographical scope. And just one way that this is obvious is, you know, you get through a 29-page affidavit and the only word that alerts the magistrate judge that there's a geographical issue is the words, wherever located, which is in a subparagraph. And then if you actually look at the face of the warrant, the face of the warrant highlights that it's Eastern District of Virginia where the search will happen and the words, wherever located, the only word that would give rise to the inference that this is going to be a search of computers all over the world is not even in the search warrant. It's not in the face of the warrant and it's not in the attachment. Now, this is, the government, you know, buried the geographical issue. Another fact to highlight is that the affidavit and the face of the warrant repeats Eastern District of Virginia over and over again and talks about it as being the area where the target website is. Yeah. Because the government didn't act in good faith. I believe so. That's not the case here. So it's an illegal search. Almost everyone has agreed with that or assumed it for the sake of argument. And then, you know, if the agents are crafting a misleading application and trying to make a judge think the search is going to happen in Eastern District of Virginia when, in fact, it's happening wherever, in unknown locations all over the world, that's not good faith. And Leon talks exactly about this issue, about not wanting agents to mislead magistrate judges. Thank you. You deserve some time for rebuttal. We'll hear from the government. Thank you. May it please the Court, David Gopstein for the government. I also represent the government at the district court below. Yes, Your Honor. I would just, I would point first to the defendant's reply brief in this case where they write on pages one to two that Eldred compels the panel to reject his argument that, quote, the warrant was obtained in bad faith because the government misled the magistrate judge regarding the nature of the search and the extent of her authority. I also understood there to be a concession about the fact that Eldred seems to foreclose this argument but he's making a slightly different argument. Well, if the argument is about the, if the argument is that the agents applying for the warrant permanently misled the magistrate judge. I believe Eldred forecloses that argument, Your Honor. Eldred said, we disagree with Eldred that actions taken by the government surrounding this warrant more broadly demonstrate the sort of deliberate, reckless, or grossly negligent conduct that the exclusionary rule exists to deter. And Eldred's panel went into detail discussing how, quote, the affidavit attached to the application for the nip warrant in this case was over 30 pages long. And so Eldred specifically addressed the exact same warrant and addressed the application and the execution of that warrant. And given that Eldred found that the good faith doctrine applies consistent with all 10 circuits that have considered the same warrant, that is binding law, unless and until Eldred is overturned by an en banc panel of this court, which has not happened, or by the Supreme Court. So unless Your Honors have additional questions, I'll rest on my papers. Thank you. So, Mr. Oluwa, just to follow up on Judge Eaton's question, and to follow up to what you heard from the government, why is suppression the remedy here? I mean, and how is this really different from others? So suppression is a remedy because, so I'll first address why it's not foreclosed by Eldred. Defense counsel in Eldred and the court didn't specifically develop the facts surrounding the lead up to it. They cited facts that I am relying on, but they only addressed one prong of Leon. They only addressed one consideration of Leon, one public policy consideration, and that was whether the warrant on its face, just an agent looking at it, could say, okay, this authorizes me to search computers all over the world. There's a different question of whether this was the type of candor we want from the government. I mean, that's the- You're saying that they, what is the misrepresentation that you rest on? Right. So the big issue with the NIT was about where is the search going to take place? What is the misrepresentation that you think? The fact that they put in the face of the warrant and the Eastern District of Virginia, and they put in the attachment the Eastern District of Virginia, and they exclude from the attachment to the warrant any mention of wherever located, which was the one thin read of a word that a magistrate judge could have seen and said, wait a second, what I'm authorizing is this global search warrant from a single warrant in one jurisdiction. It's the way they crafted this warrant was misleading and recklessly misleading or intentionally misleading. And the circumstances that suggest that this was the case they intentionally mislead the judge is that they knew they had a geographical scope issue, and they weren't forthcoming about it. And you can actually use the other case in Texas, the 2013 case, in research of computers wherever located, and in that case is the exact language the government put in the search warrant. And what they talk about in the Texas case is target computer, and they talk about target computers being located wherever. But in this case, the government didn't talk about target computers. They talked about the target website in the Eastern District of Virginia. So they shifted the whole focus to the Eastern District of Virginia to obscure the fact that this is actually a search of computers wherever located. So looking at the circumstances surrounding the warrant application, the lead-up to it, what they knew, who was involved, the highest level of the DOJ, the remote operations unit who's the experts in this very esoteric, unusual piece of technology that they knew they had legal issues with, and they just bury it. They bury the issue. So it was all these people who participated in the deleting of the warrant? They participated in the application for the warrant, and having all these people involved who knew that there was an issue with the geographical scope of the warrant. Were they all complicit in your view? Yeah, I think the way the warrant was drafted and applied for, I know what the government knew. I think they were complicit in trying to hide the ball and trying to minimize the opportunity for this magistrate judge to do what happened in Texas. What happened in Texas was the judge saw this sort of warrant and said- So you're in the position that the law enforcement officers that executed the warrant misled the magistrate? The government who applied for the warrant, I believe, crafted the warrant in a way that was intentionally or recklessly misleading, yes. That is the basis of why I don't think Go Trade applied. In Eldred, we also faced at least an allegation by Mr. Eldred that the warrant there was spatially deficient because it was limited to the eastern district of Virginia and did not encompass Vermont or the other judicial districts. So it did not have that language there either that you claim was excluded in this case. Right. The Eldred panel didn't address the other policy consideration of Leon, which is, you know, if we had to do this over again- Now you're getting to policy considerations. Well, that's- Efficiency that you identified in the warrant initially to us. Well, Leon is basically a policy sort of calculus of whether it's worth- basically a policy analysis of whether it's worthwhile to suppress the fruits. But Leon contains multiple considerations of what sort of government conduct is worth deterring. And the only consideration that the Eldred panel considered was whether it was worth deterring the agents who relied on the warrant. There was no consideration of whether it was worth deterring the lead-up, the lack of candor. Thank you. Thank you very much.